UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JANE DOE,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD ROE,<br><br>Defendant. | Case No. 2:12-cv-01644-MMD-GWF<br><br>ORDER<br><br>(Defendant's Motion to Dismiss – dkt. no. 25;<br>Defendant's Motion to Postpone all Discovery and Initial Discovery Proceedings Pending Motion to Dismiss – dkt. no. 28) |

## I. SUMMARY

Before the Court are Defendant Richard Roe's Motions to Dismiss (dkt. no. 25) and to Postpone Discovery (dkt. no. 28). For the reasons discussed below, the Motion to Dismiss is granted in part and denied in part, and the Motion to Postpone Discovery is denied.

## II. BACKGROUND

Plaintiff Jane Doe alleges that she and Defendant Richard Roe began an intimate relationship in March 2010. (Dkt. no. 1 at ¶ 3.) At the beginning of the relationship, both parties resided in California. In early 2011 Defendant moved to Nevada. (Dkt. no. 32-1 at ¶¶ 3, 6.)

Plaintiff alleges that at all times during the relationship, Defendant was knowingly afflicted with Herpes Simplex Virus II ("HSV II"), and that Defendant actively and knowingly withheld information concerning his venereal disease during the course of the parties' relationship. (Dkt. no. 1 at ¶¶ 8-9.) Plaintiff alleges that she contracted HSV II from Defendant. (*Id.* at ¶ 10.) Plaintiff avers that she would not have engaged in sexual intercourse with Defendant had she known that he had HSV II, but that Defendant did

not inform her about the disease until *after* her positive diagnosis in December 2010. (*Id.* at ¶¶ 10-12.)

Plaintiff filed the instant action on September 19, 2012, alleging that Defendant willfully transmitted HSV II to her. (Dkt. no. 1.) Plaintiff asserts claims of negligence, intentional infliction of emotional distress ("IIED"), and fraudulent misrepresentation. She requests both compensatory and punitive damages. (Dkt. no. 1 at 5.) Although Plaintiff brings this action in Nevada District Court, her negligence and fraudulent misrepresentation claims are based on California Health and Safety Code § 120290, which prohibits the willful transmission of an infectious disease. (Dkt. no. 1 at ¶¶ 16, 29.)

Defendant filed his Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. no. 25.) Defendant alternatively moves for summary judgment under Federal Rule of Civil Procedure 12(d), which allows courts to consider matters outside the pleadings presented on a 12(b)(6) motion and to construe the motion as a motion for summary judgment. The parties submit several documents to their Motion and Opposition, including affidavits and e-mail correspondence. However, as discovery has not commenced in this action, the parties have not had an opportunity to prepare the documents and arguments necessary for a complete motion for summary judgment and opposition thereto. The Court declines to construe the Motion as a motion for summary judgment.

Defendant argues that Plaintiff's claims should be dismissed because: (1) Plaintiff's claims for negligence and IIED are time-barred by the statute of limitations; (2) Plaintiff has not pled plausible allegations to support a claim for negligence or IIED; and (3) Plaintiff's fraudulent misrepresentation claim does not comply with the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b).

## III. LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 US 662, 678 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 679. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged–but not shown–that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

## IV. DISCUSSION

### A. Choice of Law[1]

When considering a case founded on diversity, federal courts must apply the substantive law of the forum state. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78-80

[1]The parties initially failed to brief the choice of law issue. On April 11, 2013, the Court ordered the parties to submit supplemental briefings on the issue, which the Court relies on in reaching its conclusion. (Dkt. nos. 23, 31 and 32.)

(1938). Pursuant to Nevada choice of law rules concerning personal injury actions, the local law of the state where the *injury* occurred determines the rights and liabilities of the parties, unless some other state has a more significant relationship to the occurrence and the parties. *Gen. Motors Corp. v. Eighth Judicial Dist.*, 135 P.3d 111, 117 (Nev. 2006) (*citing* Restatement (Second) of Conflict of Laws § 146 (1971)). Section 146 of the Restatement (Second) of Conflict of Laws defines "personal injury" as "either physical harm or mental disturbance, such as fright and shock, resulting from physical harm or from threatened physical harm or other injury to oneself or to another." More than one injury can arise from a single event. *Wyeth v. Rowatt*, 244 P.3d 765, 776 (Nev. 2010).

In *Wyeth*, the Nevada Supreme Court considered which state law governs in an action involving an injury that could have occurred in multiple states. 244 P.3d at 775-777. The plaintiffs in *Wyeth* developed breast cancer after taking hormone replacement pills manufactured by the defendant. *Id.* at 770. The plaintiffs began taking the pills in other states for seven to fourteen years before moving to Nevada, where they continued taking the pills and were diagnosed with breast cancer. *Id.* The Nevada Supreme Court held that the place of injury is "the state where the last element necessary for a claim against the tortfeasor occurs . . . ." *Id.* at 776. The Court further held that the diagnosis was the last element necessary to assert a claim against the defendants. *Id.* at 777. As such, because the diagnosis occurred in Nevada, Nevada law governed the action. *Id.* The Court reached this conclusion by reasoning that until a slow-developing disease is detected, there is no injury to redress. *Id.* at 776. Moreover, the Court held that Nevada had a more significant relationship to the parties than other states because the plaintiffs resided and were diagnosed in Nevada, and experienced emotional and physical distress from the treatments they received in Nevada. *Id.* at 777.

Nevada's choice of law principles dictate that the Court apply California law in this case. Plaintiff avers that she is unable to ascertain the state where she suffered her injury. She states that she and Defendant had intercourse multiple times in Nevada and

California before, during, and after her positive diagnosis of HSV II. (Dkt. no. 32 at 2.) It is unclear whether Plaintiff will ultimately be able to determine the location of the injury. However, Plaintiff received her positive diagnosis in California. Without this diagnosis, Plaintiff could not have known that she was infected with a sexually transmitted disease. The Court therefore holds that Plaintiff's injury occurred in California because it is the location of the diagnosis giving rise to the injury and the state where the last element (damages) of the claims occurred. Additionally, Plaintiff has alleged that following the transmission and diagnosis, she suffered severe emotional distress from her infection, incurring additional injury in California.

Defendant argues that the location of the injury must be Nevada because Plaintiff alleges that she was diagnosed with the disease only after having intercourse with Defendant in Las Vegas. Even though the transmission may have occurred in Nevada, the location of the conduct is irrelevant to this choice of law analysis. *See Renfroe v. Eli Lilly & Co.*, 686 F.2d 642, 645 (8th Cir. 1982) (holding that the injury occurred in California, the state where the cancer had been discovered, even though the conduct causing the plaintiff to obtain cancer occurred in Missouri).

Moreover, California has a more significant relationship to the parties than does Nevada. Plaintiff resides in California, and the parties began their relationship in California. Because Defendant has not demonstrated that Nevada has a more significant relationship to the parties, the Court concludes that California law applies to this case. *See* Restatement (Second) of Conflict of Laws § 146.

The Court must next determine whether Plaintiff has sufficiently pled her claims under California law.

**B. Statute of Limitations Defense to Plaintiff's Negligence and IIED Claims**

Defendant argues that Plaintiff's negligence and IIED claims should be dismissed because they were not asserted within the applicable statutes of limitations. "Statutes of limitation are considered substantive rather than procedural; therefore a federal court

sitting on a diversity case must use the limitations law of the forum state." *Flowers v. Carville*, 292 F. Supp. 2d 1225, 1229 (D. Nev. 2003) *aff'd*, 161 Fed. App'x 697 (9th Cir. 2006) (*citing Alberding v. Brunzell*, 601 F.2d 474, 476 (9th Cir.1979); *Klaxon Co. v. Stentor Electric Mfg. Co*., 313 U.S. 487, 496-97 (1941)). As such, this Court must interpret and apply the California statutes of limitations to Plaintiff's negligence and IIED claims.

The statute of limitations for both negligence and IIED in California is two years. Cal. Civ. Proc. Code § 335.1. Generally, the date of a cause of action is measured from when the injury occurs. *Jolly v. Eli Lilly Co.*, 751 P.2d 923, 926 (Cal. 1988). California, however, has adopted the "discovery rule" in which "the accrual date of a cause of action is delayed until the plaintiff is aware of her injury and its negligent cause." *Rivas v. Safety-Kleen Corp.*, 98 Cal. App. 4th 218, 224 (2002) (*quoting Jolly*, 751 P.2d at 926). The discovery rule measures the date of injury from the time a plaintiff discovers, or has reason to discover, the cause of action. *Id.* at 225. Thus, the limitations periods here began accruing once Plaintiff "has notice or information of circumstances to put a reasonable person on inquiry . . . ." *Id.* When a suspicion of wrongdoing arises, a plaintiff must find the facts underlying the possible cause of action; a plaintiff cannot wait for the facts to find them. *Id.* Additionally, a plaintiffs is held to "knowledge that could reasonably be discovered through investigation open to [the plaintiff]," and thus does not need to have actual knowledge of the facts giving rise to her potential claim. *Id*.

In his Motion to Dismiss, Defendant argues that the statute of limitations began to run in July of 2010, when Plaintiff began experiencing symptoms similar to an HSV II infection. However, the Complaint alleges that Plaintiff was diagnosed in December 2010. (Dkt. no. 1 at ¶ 10.) The date of diagnosis is the relevant date here; the statute of limitations was triggered when Plaintiff was diagnosed, not merely when she experienced certain symptoms associated with HSV II. *See Graveline v. Select Comfort Retail Corp.*, 871 F. Supp. 2d 1033, 1038 (E.D. Cal. 2012) (holding that the statute of limitations did not begin accruing until after plaintiffs discovered the cause of their

alleged injuries, not when they began experiencing symptoms associated with their injuries).

Even were Defendant correct that the date in which Plaintiff suspected she contracted HSV II was the relevant date here, Plaintiff does not allege that she suspected she had contracted HSV II before December 2010. Defendant cites to e-mail evidence stating that Plaintiff was suspicious she had the virus in July 2011, but the Court does not consider these documents on a motion to dismiss. This is because generally, a court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). There are three exceptions to this rule, none of which are applicable here. *See Lee v. Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (describing the exceptions: "'1) a court may consider documents properly submitted as part of the complaint on a motion to dismiss; 2) if documents are not physically attached to the complaint, incorporation by reference is proper if the document's authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on them; and 3) a court may take judicial notice of 'matters of public record.'") (internal citations omitted). In fact, "[a] motion to dismiss based on the running of the statute of limitations period may be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Bancroft Life & Cas. ICC, Ltd. v. Scolari*, No. 3:11-CV-5017, 2012 WL 4514361, at *3 (W.D. Wash. Oct. 2, 2012) (*quoting Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206–07 (9th Cir. 1995)). This is not the case here.

Plaintiff filed this lawsuit on September 19, 2012. She alleges that she was diagnosed in December 2012. Therefore, looking solely to the allegations contained in the Complaint, the two-year California statute of limitations for IIED and negligence does not bar this suit.

///

///

**C. Negligence**

To bring a negligence claim under California law, a plaintiff must show "duty; breach of duty; legal cause; and damages." *Friedman v. Merck & Co.*, 107 Cal. App. 4th 454, 463 (2003). "The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion." *Paz v. State of Cal.*, 994 P.2d 975, 981 (Cal. 2000). Defendant owed Plaintiff a duty under California law. California Health and Safety Code § 120290 provides that "[a]ny person afflicted with any contagious, infections, or communicable disease who willfully exposes himself or herself to another person . . . is guilty of a misdemeanor." Defendant allegedly violated this statute by transmitting HSV II to Plaintiff. When a court adopts conduct proscribed by a statute as the standard of care for negligence, negligence is presumed when the statute is violated. *Spates v. Dameron Hosp. Assn.*, 114 Cal. App. 4th 208, 218 (2003).

Negligence *per se* creates a presumption of negligence if four elements are established: "(1) the defendant violated a statute, ordinance, or regulation of a public entity; (2) the violation proximately caused death or injury to person or property; (3) the death or injury resulted from an occurrence of the nature of which the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted." *Galvez v. Frields*, 88 Cal. App. 4th 1410, 1420 (2001).

Plaintiff has alleged sufficient facts showing that Defendant violated § 20290 of the California Health and Safety Code by willfully exposing himself to her. Plaintiff alleges that Defendant knew he was infected with HSV II while in a relationship with Plaintiff, and that Defendant and Plaintiff engaged in unprotected sex prior to Plaintiff being diagnosed with HSV II.

Plaintiff has also sufficiently alleged that Defendant's willful exposure was the proximate cause of her contracting the disease. Plaintiff alleges that she was not

infected with HSV II prior to commencing the relationship with Defendant, and that Plaintiff did not have sexual relations with any other men during their relationship (dkt. no. 1 at ¶¶ 13-14), giving rise to the reasonable inference that she contracted the disease from Defendant.

Additionally, Plaintiff has alleged facts suggesting that her injury is the type which the statute was designed to prevent. Section 120290 prohibits the transmission of infectious diseases, and Plaintiff alleges that Defendant transmitted an infectious venereal disease to her. (Dkt. no. 1 at ¶ 19.)

Defendant contends that Plaintiff's allegations demonstrate that she could not have contracted HSV II from Defendant. Defendant points out that Plaintiff (1) did not become aware of her infection until nine months after commencing the sexual relationship with Defendant, despite HSV II's short incubation period; (2) may have contracted the disease from a prior relationship; and (3) apologized to Defendant for accusing him of giving her HSV II. (Dkt. no. 13 at 10-11.) Plaintiff's late diagnosis does not render the allegation that Defendant transmitted the disease to her implausible. Defendant's argument regarding the apology relies on documents outside the pleadings, and the argument is therefore inappropriate on a motion to dismiss. And while it is possible Plaintiff received the venereal disease from another person, this does not warrant dismissal; at this stage of the litigation, Plaintiff must only show that it is *plausible* that Defendant is responsible for the transmission. *See Iqbal*, 550 U.S. at 555.

Taking Plaintiff's allegations in the light most favorable to her with all reasonable inferences drawn in her favor, she has alleged enough to state a claim of negligence *per se*.

**D. Intentional Infliction of Emotional Distress**

In order to establish a claim for IIED under California law, a plaintiff must allege: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional

distress by the defendant's outrageous conduct." *Ess v. Eskaton Props., Inc.*, 97 Cal. App. 4th 120, 129 (2002). Conduct is outrageous when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id*. Moreover, the conduct must be intentional such that it is calculated to cause mental distress to a very serious degree. *Id.* at 130.

Despite Defendant's arguments to the contrary, the Complaint sufficiently alleges a claim for IIED. It alleges that Defendant willfully withheld knowledge of his condition from Plaintiff while the two engaged in a sexually active relationship, and alleges that Defendant's conduct caused Plaintiff to suffer extreme emotional distress. (Dkt. no 1 at ¶¶ 24, 26.) It is certainly plausible that Defendant's decision to knowingly withhold information about his STD, and then to engage in sexual intercourse with Plaintiff and ultimately transmit the STD to Plaintiff, could cause her to suffer extreme emotional distress. Such conduct, if true, is outside the boundaries of decency deemed acceptable by society. *See Ess*, 97 Cal. App. 4th at 129. Plaintiff has pled the elements necessary to support her cause of action, and this claim survives Defendant's Motion.

**E. Fraudulent Misrepresentation and Punitive Damages**

To assert a claim of fraudulent misrepresentation in California, a plaintiff must show: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lovejoy v. AT & T Corp.*, 92 Cal. App. 4th 85, 93 (2001) (citations omitted).

Fraud claims must meet a heightened pleading standard under Federal Rule of Civil Procedure 9(b), which requires a party to "state with particularity the circumstances constituting fraud." The plaintiff must plead with particularity "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). However, when a plaintiff fails to plead fraud with particularity, "leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." *Balistreri v. Pacifica Police Dep't*,

901 F.2d 696, 701 (9th Cir. 1988). If allegations concerning fraud do not comply with Rule 9(b), the court should "'disregard' those averments, or 'strip' them from the claim." *Vess*, 317 F.3d at 1105.

Plaintiff alleges that Defendant informed her that he was not infected with any sexually transmitted diseases and that he was regularly tested in order to induce Plaintiff to have sex. (Dkt. no. 1 at ¶ 30.) Plaintiff further alleges that Defendant "at all material times" knew that he was infected with HSV II. (Dkt. no. 1 at ¶ 8). The Complaint also alleges that Plaintiff contracted HSV II as a result of Defendant's inducement. But while Plaintiff has sufficiently pled the elements of fraud as well as the content of the misrepresentations, Plaintiff has not identified the time or place the misrepresentations occurred. For example, the Complaint does not allege precisely when Defendant told Plaintiff he did not have HSV II. Thus, Plaintiff's allegations fail to meet the heightened pleading standards of Rule 9(b). This cause of action is accordingly dismissed without prejudice.

Moreover, Plaintiff's request for punitive damages, which she seeks in connection only with her claim for fraudulent misrepresentation (dkt. no. 1 at ¶ 33), must be dismissed without prejudice as well.

## V. DEFENDANT'S MOTION TO POSTPONE ALL DISCOVERY AND INITIAL DISCOVERY PLANNING PROCEEDING PENDING MOTION TO DISMISS

Defendants asks the Court to postpone discovery until after deciding the Motion to Dismiss, and if the case is not dismissed, until a reasonable time after the Court's decision. Defendant argues that good cause exists because he is a working father, has no insurance to cover this claim, and has little money to cover his legal fees.

This Order disposes of Defendant's pending motion. Therefore, Defendant's request is largely mooted.

## VI. CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss (dkt. no. 25) is GRANTED in part and DENIED in part. The fraudulent misrepresentation claim and

related request for punitive damages are DISMISSED WITHOUT PREJUDICE. The Motion is DENIED in all other respects.

IT IS FURTHER ORDERED that Defendant's Motion to Stay Discovery (dkt. no. 28) is DENIED as moot.

DATED THIS 25th day of April 2013.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE